IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DOMINICK GREEN, | § | |
| | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:24-cv-337 |
| | § | |
| CITY OF MESQUITE, TEXAS, | § | |
| et. al., | § | |
| Defendants | § | |

**PLAINTIFF'S BRIEF IN RESPONSE TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

Plaintiff Dominick Green files this Response to the Defendants' Motion to Dismiss under Rule 12(b)(6). (Docs. 8, 9).

TABLE OF CONTENTS

Table of Contents...........................................................................................................2

Table of Authorities ....................................................................................................4

Introduction ..................................................................................................................8

Standard of Review ......................................................................................................8

I.    The pleading standard applicable to Plaintiff's excessive force claims..............10

II.   The pleading standard applicable to Plaintiff's municipal liability claims........11

Argument and Authorities ........................................................................................12

I.    Plaintiff's Claims Against Officers Pabst and Rose ...........................................12

      A.    Plaintiff has adequately pleaded a claim for excessive force against the
            Defendant Officers. .......................................................................................12

      B.    Plaintiff's pleadings are sufficient to defeat the Defendant Officers' claim
            of qualified immunity ....................................................................................14

            1.    The Defendant Officers' objectively unreasonable excessive use of
                  force implicates a Fourth Amendment violation..............................14

            2.    The Defendant Officers violated a clearly established Fourth
                  Amendment right to be free from the use of excessive force. ..........15

II.   Plaintiff's Claims Against the City of Mesquite ..................................................17

      A.    Plaintiff identified an unwritten policy or custom of allowing
            unconstitutional excessive force. ..................................................................17

      B.    Plaintiff adequately pled a valid claim for failure to supervise or
            discipline.......................................................................................................19

      C.    Plaintiff adequately pleaded a claim for ratification..................................20

      D.    Plaintiff adequately pled that the City's policies or customs were the
            moving force cause of the violation of Green's constitutional rights. ......21

III.    Additional discovery will allow Plaintiff further opportunity to establish liability against the City and the Defendant Officers..........................................25

Conclusion and Prayer ................................................................................... 25

CERTIFICATE OF SERVICE ......................................................................... 26

TABLE OF AUTHORITIES

**Cases**

*Aguirre v. City of San Antonio*,
  995 F.3d 395 (5th Cir. 2021) ....................................................................... 15, 16

*Alexander v. Verizon Wireless Servs., L.L.C.*,
  875 F.3d 243 (5th Cir. 2017) ............................................................................. 9

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ......................................................................................... 9

*Balle v. Nueces Cty., Tex.*,
  690 F. App'x 847 (5th Cir. 2017) .................................................................... 20

*Behrens v. Pelletier*,
  516 U.S. 299 (1996) ....................................................................................... 11

*Burge v. St. Tammany Par.*,
  336 F.3d 363 (5th Cir. 2003) .......................................................................... 18

*Bush v. Strain*,
  513 F.3d 492 (5th Cir. 2008) .......................................................................... 10

*City of St. Louis v. Praprotnik*,
  485 U.S. 112 (1988) (plurality opinion) ......................................................... 20

*Cole v. Carson*,
  935 F.3d 444 (5th Cir. 2019) (*en banc*) ..................................................... 16, 17

*Cole v. Hunter*,
  497 F. Supp. 3d 172 (N.D. Tex. 2020) ........................................................... 22

*Cotropia v. Chapman*,
  721 Fed. Appx. 354 (5th Cir. 2018) ................................................................ 11

*Covington v. City of Madisonville*,
  812 F. App'x 219 (5th Cir. 2020) .................................................................... 22

*Deville v. Marcantel*,
  567 F.3d 156 (5th Cir. 2009) .......................................................................... 19

*Flanagan v. City of Dall., Tex.*,
  48 F. Supp. 3d 941 (N.D. Tex. 2014) (Lynn, J.) ......................................... 11, 12

*Freeman v. Gore*,
  483 F.3d 404 (5th Cir. 2007) ..................................................................... 12, 13

*Fuentes v. Nueces Cnty., Tex.*,
689 Fed. Appx. 775 (5th Cir. 2017) .................................................................................23

*Gallaher v. City of Maypearl, Tex.*,
No. 3:17-CV-1400-M, 2018 WL 700252 (N.D. Tex. Feb. 2, 2018).....................................12

*Graham v. Connor*,
490 U.S. 386 (1989) ...........................................................................................................14

*Grandstaff v. Borger*,
767 F.2d 161 (5th Cir. 1985) ........................................................................................23, 24

*Great Plains Tr. Co. v. Morgan Stanley Dean Witter*,
313 F.3d 305 (5th Cir. 2002) ............................................................................................9, 10

*Groden v. City of Dallas*,
826 F.3d 280 (5th Cir. 2016) ..............................................................................................20

*Hobart v. City of Stanford*,
916 F. Supp. 2d 783 (S.D. Tex. 2013)...........................................................................20, 23

*Hope v. Pelzer*,
536 U.S. 730 (2002) ...........................................................................................................15

*Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*,
677 F.2d 1045 (5th Cir. 1982) ..............................................................................................9

*King v. Chide*,
975 F.2d 653 (5th Cir. 1992) ..............................................................................................14

*Kinney v. Weaver*,
367 F.3d 337 (5th Cir. 2004) ..............................................................................................15

*Lormand v. U.S. Unwired, Inc.*,
565 F.3d 228 (5th Cir. 2009) ................................................................................................9

*Lupi v. Diven*,
No. 1:20-CV-207-RP, 2020 WL 6324396 (W.D. Tex. Oct. 27, 2020) ................................22

*Lytle v. Bexar Cnty., Tex.*,
560 F.3d 404 (5th Cir. 2009) ..............................................................................................17

*Mann v. Adams Realty Co.*,
556 F.2d 288 (5th Cir. 1977) ................................................................................................8

*Milam v. City of San Antonio*,
113 F. App'x 622 (5th Cir. 2004) ...................................................................................22, 23

*Milam v. City of San Antonio*,
113 Fed. Appx. 622 (5th Cir. 2004) ..................................................................18

*Morgan v. Hubert*,
335 F. App'x 466 (5th Cir. 2009) ........................................................................9

*Newman v. Guedry*,
703 F.3d 757 (5th Cir. 2012) ............................................................................17

*Pineda v. City of Houston*,
291 F.3d 325 (5th Cir. 2002) ............................................................................17

*Ramirez v. Knoulton*,
542 F.3d 124 (5th Cir. 2008) ............................................................................13

*Reyes v. Bridgwater*,
362 Fed. App'x 403 (5th Cir. 2010) ..................................................................17

*United States ex rel. Riley v. St. Luke's Episcopal Hosp.*,
355 F.3d 370 (5th Cir. 2004) ..............................................................................9

*Rivera v. City of San Antonio*,
No. SA-06-CA-235-XR, 2006 WL 3340908 (W.D. Tex. Nov. 15, 2006) ............................20

*Santibanes v. City of Tomball, Tex.*,
654 F. Supp. 2d 593, 613 (S.D. Tex. 2009) ................................................20, 21

*Saucier v. Katz*,
533 U.S. 194 (2001), *overruled in part by Pearson v. Callahan*, 555 U.S. 223
(2009) .........................................................................................................10, 14

*Shelton v. Wise*,
306 Fed. App'x 60 (5th Cir. 2009) ....................................................................15

*Sonnier v. State Farm Mut. Auto. Ins. Co.*,
509 F.3d 673 (5th Cir. 2007) ..............................................................................9

*Speck v. Wiginton*,
606 F. App'x 733 (5th Cir. 2015) (per curiam) ..................................................11

*Taylor v. Hartley*,
488 F. Supp. 3d 517 (S.D. Tex. 2020) ........................................................22, 23

*Tennessee v. Garner*,
471 U.S. 1 (1985) ......................................................................................13, 16

*Thomas v. City of Galveston, Tex.*,
800 F. Supp. 2d 826 (S.D. Tex. 2011) ................................................................11

*Turner v. Pleasant*,
    663 F.3d 770 (5th Cir. 2011) ........................................................................9

*Villarreal v. Wells Fargo Bank, N.A.*,
    814 F.3d 763 (5th Cir. 2016) ......................................................................10

*Webster v. City of Houston*,
    735 F.2d 838 (5th Cir. 1984) ......................................................................18

*Williams v. City of Denton, Tex.*,
    No. 4:17-cv-00811, 2019 WL 438403 (E.D. Tex. Jan. 10, 2019) *report and
    recommendation adopted,* 2019 WL 430913 (E.D. Tex. Feb. 4, 2019)................................22

*World Wide St. Preachers Fellowship v. Town of Columbia*,
    591 F.3d 747 (5th Cir. 2009) ......................................................... 19, 21

*Zadeh v. Robinson*,
    902 F.3d 483 (5th Cir. 2018) (Willet, J., concurring) .......................................15

## Other Authorities

Rule 12(b)(6) ..................................................................................8, 9, 10

## INTRODUCTION

This is a civil rights lawsuit arising from the unlawful use of excessive force against Plaintiff by Defendants Pabst and Rose (the "Defendant Officers"), police officers for the City of Mesquite. Plaintiff has also brought claims against the City of Mesquite ("the City") for violations under 42 U.S.C. § 1983.

Plaintiff has alleged that the City failed to supervise or discipline the officers involved, and that the City ratified the officers' actions after the fact. Plaintiff also alleged that Officers Pabst and Rose used unconstitutional excessive force when they shot him multiple times in the back. Plaintiff did not have a weapon in either hand, did not pose any threat to the officers or to others, and was not committing any crime. The Defendant Officers approached him late at night in the dark and thus were not readily identifiable as police officers. Green did not know they were officers and made a reasonable decision to run from two unknown men approaching him late at night.

On February 27, 2024, the City and Officers Pabst and Rose (collectively "Defendants") filed a Rule 12(b)(6) Motion to Dismiss (Docs. 8, 9). The issue for consideration in the Defendants' 12(b)(6) motion is whether Plaintiff's complaint adequately pleads (1) *Monell* claims against the City for a failure to train, supervise, or discipline, and by ratifying the use of unconstitutional and objectively unreasonable excessive force, and (2) excessive force claims against Officers Pabst and Rose.

## STANDARD OF REVIEW

The pleading stage is not the point at which Plaintiff must establish the level of proof necessary to ultimately prevail. *See Mann v. Adams Realty Co.*, 556 F.2d 288, 293 (5th

Cir. 1977). Indeed, a "strong framework of policy considerations . . . militate[s] against granting motions to dismiss for failure to state a claim[.]" *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982). Thus, in the Fifth Circuit, motions to dismiss under Rule 12(b)(6) "are viewed with disfavor and are rarely granted." *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 231 (5th Cir. 2009) (quoting *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 570 (5th Cir. 2005)); *see also Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011).  And, in the motion to dismiss context, Plaintiff's allegations must be taken as true.  *See e.g., Ashcroft v. Iqbal*, 556 U.S. 662, 696 (2009); *Alexander v. Verizon Wireless Servs., L.L.C.*, 875 F.3d 243, 249 (5th Cir. 2017).

The ultimate question in a Rule 12(b)(6) motion is whether the complaint states a valid claim when it is viewed in the light most favorable to the plaintiff. *Great Plains Tr. Co. v. Morgan Stanley Dean Witter*, 313 F.3d 305, 312 (5th Cir. 2002). Two primary principles guide the plausibility analysis. *Iqbal*, 556 U.S. at 678–79. First, the court must "liberally construe the complaint in favor of the plaintiff[.]" *Id.*  Second, the court must "accept all well-pleaded factual allegations as true." *Id.*; *see also Sonnier v. State Farm Mut. Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007). Courts do not evaluate the merits of the allegation but only consider whether plaintiffs have adequately pleaded a legally cognizable claim. *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004). Thus, a pleading simply needs to provide "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary claims or elements." *Morgan v. Hubert*, 335 F. App'x 466, 470 (5th Cir. 2009) (internal quotation omitted).

Moreover, Rule 12(b)(6) restricts courts considering dismissal to "the contents of the pleadings and the attachments thereto." *Villarreal v. Wells Fargo Bank, N.A.*, 814 F.3d 763, 766 (5th Cir. 2016); *see also Great Plains*, 313 F.3d at 314. The Court may not consider any basis for dismissing Plaintiff's claims that relies on facts not shown on the face of the complaint or on evidence attached to a defendant's motion. Guided by these principles, it follows that dismissal may not be based on the movant's allegations that the facts are not as the plaintiff alleges them to be.

## I. The pleading standard applicable to Plaintiff's excessive force claims

Once Defendants properly invoke qualified immunity, assessing their entitlement to the defense consists of two separate inquiries. First, the court asks whether the facts as alleged in the complaint show that the Defendants' conduct was objectively unreasonable in violation of a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled in part by Pearson v. Callahan*, 555 U.S. 223, 236 (2009). If such a violation is found, the court then determines whether the complaint has sufficiently alleged that the right was "clearly established" at the time. *Id.* A right may be clearly established "despite notable factual distinctions between the precedents relied on and the cases then before the Court." *Bush v. Strain*, 513 F.3d 492, 502 (5th Cir. 2008). In both steps of this analysis, the court must view the allegations in the light most favorable to the Plaintiff to determine whether the complaint states a valid claim. *Great Plains*, 313 F.3d at 312. The key concern is whether the complaint has adequately alleged that the Defendant officers were on notice that the conduct violated the Plaintiff's constitutional rights.

Showing the Defendants are not entitled to a qualified immunity defense at the pleading stage does not impose on Plaintiff the demanding standard of negating both prongs of the defense with evidence. Unlike at the summary judgment stage, when evidence is considered, and not just the pleadings, "[a]t that earlier stage, it is the defendant's conduct *as alleged in the complaint* that is scrutinized for 'objective legal reasonableness'." *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996) (emphasis in original). Moreover, "[i]n showing that the defendant's actions violated clearly established law, the plaintiff need not rebut every conceivable reason that the defendant would be entitled to qualified immunity, including those not raised by the defendant." *Cotropia v. Chapman*, 721 Fed. Appx. 354, 360 (5th Cir. 2018).

## II.    The pleading standard applicable to Plaintiff's municipal liability claims

In the municipal liability context, "only minimal factual allegations should be required at the motion to dismiss stage." *Thomas v. City of Galveston, Tex.*, 800 F. Supp. 2d 826, 842–43 (S.D. Tex. 2011); *see also Speck v. Wiginton*, 606 F. App'x 733, 735–36 (5th Cir. 2015) (per curiam). A municipal-liability claim thus satisfies the federal pleading standard if it describes, for instance: "(1) past incidents of misconduct by the defendant to others; (2) multiple harms that occurred to the plaintiff himself; (3) the involvement of multiple officials in the misconduct; (4) the specific topic of the challenged policy or training inadequacy," *or* (5) "misconduct that occurred in the open," "together with any additional elaboration possible." *Flanagan v. City of Dall., Tex.*, 48 F. Supp. 3d 941, 947 (N.D. Tex. 2014) (Lynn, J.) (adopting report & recommend. of Tolliver, Mag. J.) (emphasis added). "Those types of details, together with any additional elaboration possible, help to (1) 'satisfy the

requirement of providing not only fair notice of the nature of the claim, but also grounds on which the claim rests;' and (2) 'permit the court to infer more than the mere possibility of misconduct.'" *Id.*

> In the context of municipal liability, as opposed to individual officer liability, it is exceedingly rare that a plaintiff will have access to (or personal knowledge of) specific details regarding the existence or absence of internal policies or training procedures prior to discovery. Thus, a plaintiff need not specifically state what the municipal policy is and can rely on minimal factual allegations at this stage in the litigation.

*Gallaher v. City of Maypearl, Tex.*, No. 3:17-CV-1400-M, 2018 WL 700252, at *3 (N.D. Tex. Feb. 2, 2018) (citing *Thomas*, 800 F.Supp.2d at 842).

Finding a complaint insufficient even when it describes the specific topic of the targeted policy, procedures, or failures in supervision and discipline—and elaborates to the extent possible without discovery—imposes a different, impermissibly high standard of the sort the Northern District has rejected. *See e.g., id.*

## ARGUMENT AND AUTHORITIES

### I.      Plaintiff's Claims Against Officers Pabst and Rose

#### A.      Plaintiff has adequately pleaded a claim for excessive force against the Defendant Officers.

To prevail on an excessive force claim, a plaintiff must establish: "(1) injury (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Freeman v. Gore*, 483 F.3d 404, 416 (5th Cir. 2007).  Green was shot multiple times and severely injured as a result of the Defendant Officers' collective use of deadly force—element one is clear from the pleading.

The constitutional analysis in this case thus turns on whether the Defendant Officers' use of force was "excessive" and objectively "unreasonable." *Gore*, 483 F.3d at 416; *see Ramirez v. Knoulton*, 542 F.3d 124, 128 (5th Cir. 2008) (holding that because there was no dispute that the plaintiff suffered an injury, "[t]he relevant question . . . [was] whether the force was 'clearly excessive' or 'clearly unreasonable'"). Courts "must balance the amount of force used against the need for force." *Ramirez*, 542 F.3d at 129. The objective reasonableness balancing test typically considers "whether the totality of the circumstances justified that particular sort of search or seizure." *Tennessee v. Garner*, 471 U.S. 1, 8-9 (1985).

As set out in the Plaintiff's Complaint, at around 11:30 p.m., Green had gone to the apartment where his daughter lived with her mother to deliver money for his daughter's dance competition the next day. (Doc. 1 at p. 3). When no one answered the door, he continued to knock for a period of time, but eventually gave up and went to leave. *Id.* As he was leaving, two individuals approached him in the dark, but he could not see who they were, and ran because he was afraid of being robbed or assaulted by two strangers approaching him at night. *Id.* at p. 4. Despite having no reason to, the Defendant Officers shot Green eight times as he fled. Green did not have a weapon in his hands, did not point a weapon or anything resembling a weapon at the officers, and made no threatening movements, gestures, or statements to the Defendant Officers. *Id.* Green was not a threat to the officers or anyone else, and the Defendant Officers had no reasonable fear of death or serious injury to themselves or others by Green. *Id.* The Defendant Officers did not clearly identify themselves or their reason for approaching him in the

dark at 11:30 p.m., and instead shot him in in the back as he ran for his life. *Id.* He was initially shot twice in the back, and then in the knee. *Id.* When he fell to the ground, he had his hands up in a surrender position and was not a threat to anyone, yet he was shot again in the shoulder. *Id.* Ultimately, he suffered eight gunshot wounds. *Id.* There was no justification for any use of deadly force.

### B.   Plaintiff's pleadings are sufficient to defeat the Defendant Officers' claim of qualified immunity

Because Plaintiff has established that the Defendant Officers used excessive force, the Court next turns to whether the Defendant Officers are entitled to qualified immunity as to that use of excessive force. Assessing a defendant's entitlement to qualified immunity consists of two separate inquiries.  First, courts ask whether the facts alleged, taken in the light most favorable to the party asserting the injury, show that the defendant's conduct violated a constitutional right. *Saucier*, 533 U.S. at 201  (a court may now consider either prong first).  If such a constitutional violation is found, "[t]he relevant, dispositive inquiry is whether it would be clear to a reasonable officer that the conduct was unlawful in the situation he confronted." *Id.* at 194–95.

### 1.   The Defendant Officers' objectively unreasonable excessive use of force implicates a Fourth Amendment violation.

The first prong of the qualified immunity inquiry determines "whether a constitutional right would have been violated on the facts alleged." *Saucier*, 533 U.S. 194, 200.  If a law enforcement officer uses excessive force in the course of making an arrest, the Fourth Amendment guarantee against unreasonable seizure is implicated. *King v. Chide*, 975 F.2d 653, 656 (5th Cir. 1992); *see Graham v. Connor*, 490 U.S. 386, 395 (1989) ("[A]ll

claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard.").

Because the Defendant Officers' use of force was objectively unreasonable (*see supra* Section I.A), the Defendant Officers necessarily violated Green's constitutional rights.

### 2. The Defendant Officers violated a clearly established Fourth Amendment right to be free from the use of excessive force.

The second prong assesses whether the Defendant Officers violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Hope v. Pelzer*, 536 U.S. 730, 736, 739 (2002); *Shelton v. Wise*, 306 Fed. App'x 60, 62 (5th Cir. 2009). Whether a right is clearly established entails assessing whether prior court decisions gave "reasonable warning that the conduct at issue violated constitutional rights." *Kinney v. Weaver*, 367 F.3d 337, 350 (5th Cir. 2004) (quoting *Pelzer*, 536 U.S. at 740).[1]

The constitutional right underlying this case—*i.e.*, the Fourth Amendment right to be free from excessive force—has been clearly established for at least a decade. It is not necessary that a previous case presenting identical facts exist in order for a right to be clearly established. *Aguirre v. City of San Antonio*, 995 F.3d 395, 415 (5th Cir. 2021). The

---

[1] Justice Willett is critical of decisions requiring plaintiffs to "cite functionally identical precedent that places the legal question 'beyond debate' to 'every' reasonable officer," observing a trend in which many courts avoid the more difficult question of "whether the challenged behavior violates the Constitution" by "skipping to the simpler prong: no factually analogous precedent." *Zadeh v. Robinson*, 902 F.3d 483, 498 (5th Cir. 2018) (Willet, J., concurring) (citing *Pearson v. Callahan*, 555 U.S. 223, 227 (2009). "But the inexorable result is 'constitutional stagnation'—fewer courts establishing law at all, much less clearly doing so." *Id.* at 498–99.

central concept is that of "fair warning"—the law can be clearly established despite

notable factual distinctions between the precedents relied on and the cases then before

the Court, so long as the prior decisions give reasonable warning that the conduct then

at issue violated constitutional rights. *Id.*

The facts in *Tennessee v. Garner* set the standard for the clearly established law here.

In *Garner*, the suspect had burgled a house and was attempting to jump a fence to flee

from police officers when he was shot in the back of the head. *Garner*, 471 U.S. at 3. The

United States Supreme Court made clear that:

> The use of deadly force to prevent the escape of all felony suspects,
> whatever the circumstances, is constitutionally unreasonable. It is not better
> that all felony suspects die than that they escape. Where the suspect poses
> no immediate threat to the officer and no threat to others, the harm resulting
> from failing to apprehend him does not justify the use of deadly force to do
> so.  It is no doubt unfortunate when a suspect who is in sight escapes, but
> the fact that the police arrive a little late or are a little slower afoot does not
> always justify killing the suspect. A police officer may not seize an
> unarmed, nondangerous suspect by shooting him dead.

*Garner*, 471 U.S. at 11.  The constitutional right underlying this case—i.e., the Fourth

Amendment right to be free from excessive, deadly force—has been clearly established

since at least 1985, and this rule, in and of itself, can be sufficient in obvious cases, without

dependence on the fact patterns of other cases. *Cole v. Carson*, 935 F.3d 444, 453 (5th Cir.

2019) (*en banc*); see also *Aguirre*, 995 F.3d at 415. Yet, the rule has been defined more

specifically in this Circuit, since at least 2009:

> We need not dwell on this issue. It has long been clearly established that,
> absent any other justification for the use of force, it is unreasonable for a
> police officer to use deadly force against a fleeing felon who does not pose
> a sufficient threat of harm to the officer or others.

*Lytle v. Bexar Cnty., Tex.*, 560 F.3d 404, 417-18 (5th Cir. 2009) (internal citations omitted).[2]

Furthermore, the Supreme Court under *Garner* requires that an officer, before using any force (much less deadly force), assess the situation and evaluate the level of force needed based on the circumstances presented. The Defendant Officers chose to shoot a person they had not identified, who posed no threat, and who had committed no crime. Instead, because Green reasonably fled from two unidentified men approaching him in the dark, the Defendant Officers "chose to shoot first instead." *Cole*, 935 F.3d at 453. Thus, even apart from the clearly established law in *Graham*, "[t]his is an obvious case." *Id.*

## II.    Plaintiff's Claims Against the City of Mesquite

In order to plead liability under *Monell*, a plaintiff must prove: (1) an official policy or custom, of which (2) a policy maker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy or custom. *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002). Here, Plaintiff alleged that the City ratified the Defendant Officers conduct by refusing to discipline any of them for their actions leading to Green's serious injuries.

### A.    Plaintiff identified an unwritten policy or custom of allowing unconstitutional excessive force.

An official policy generally takes one of two forms:

---

[2] *See also Newman v. Guedry*, 703 F.3d 757, 763 (5th Cir. 2012) ("It is beyond dispute that Newman's right to be free from excessive force during an investigatory stop or arrest was clearly established in August 2007."); *Reyes v. Bridgwater*, 362 Fed. App'x 403, 409 (5th Cir. 2010) ("The cases on deadly force are clear: an officer cannot use deadly force without an immediate serious threat to himself or others.").

(1) A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or

(2) A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy (*i.e.*, an unwritten policy).

*Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984); *see also Burge v. St. Tammany Par.*, 336 F.3d 363, 369 (5th Cir. 2003). Moreover, a policymaker's "response might provide evidence of the content of a municipality's policies. That is, the failure to take disciplinary action in response to an illegal arrest, when combined with other evidence, could tend to support an inference that there was a preexisting *de facto* policy of making illegal arrests: the policymaker did not discipline the employee because, in the policymakers' eyes, the employee's illegal conduct actually conformed with municipal policy." *Milam v. City of San Antonio*, 113 Fed. Appx. 622, 628 (5th Cir. 2004).

Plaintiff outlined that the City had an unwritten policy, practice, or custom on February 12, 2022, of allowing officers to use unconstitutional excessive force without discipline, supervision, or any other oversight, and that the City would ratify any such conduct after the fact. In particular, Plaintiffs allege that the City:

a.   the City of Mesquite and Chief Gill failed to adequately supervise and/or discipline its employees in handling usual and recurring situations with which they deal;

b.   the City of Mesquite and Chief Gill failed to adequately supervise and/or discipline its employees for known violations of the law;

c.   Chief Gill was deliberately indifferent to the need to supervise and/or discipline his officers and/or employees adequately;

    d.   the failure to adequately supervise and/or discipline its officers proximately caused the deprivation of Green's constitutional rights; and

    e.   the City of Mesquite and Chief Gill failed to adequately supervise and/or discipline the Defendant Officers for shooting Green for no lawful reason, resulting in severe injuries to Green.

(Doc. 1 at 10). This after-the-fact ratification and failure to supervise or discipline is indicative of an unwritten policy supporting police officers in using unconstitutional excessive force. *See World Wide St. Preachers Fellowship v. Town of Columbia*, 591 F.3d 747, 755 (5th Cir. 2009) (ratification of an obvious violation of clearly established law is sufficient to establish an unofficial policy or custom).

## B.    Plaintiff adequately pled a valid claim for failure to supervise or discipline.

To prevail on a failure to supervise or discipline claim, Plaintiff must show: (1) the municipality failed to discipline its employees; (2) that failure to discipline amounted to deliberate indifference; and (3) the failure to discipline directly caused the constitutional violations in question. *See Deville v. Marcantel*, 567 F.3d 156, 171 (5th Cir. 2009).

When the City failed and refused to discipline the officers for their clearly established constitutional violations, it approved of and ratified the officers' conduct, which itself establishes a custom of the Mesquite Police Department.  *World Wide St. Preachers Fellowship*, 591 F.3d at 755. Chief Gill has personal knowledge that the Defendant Officers were not justified in shooting Green but has failed to take any actions against the Defendant Officers. Plaintiff also alleged that the City and the Mesquite Police Department regularly conduct sham internal investigations under a conflict of interest.

Officers Rose and Pabst have not been disciplined in any way by the City or the Mesquite Police Department.

When a municipality approves a subordinate's conduct and the basis for it, liability for that conduct is chargeable against the municipality because it has "retained the authority to measure the official's conduct for conformance with their policies." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) (plurality opinion); *Groden v. City of Dallas*, 826 F.3d 280, 284 (5th Cir. 2016); *see also Balle v. Nueces Cty., Tex.*, 690 F. App'x 847, 852 (5th Cir. 2017).  Under *Praprotnik*, "post hoc ratification by a final policymaker is sufficient to subject a city to liability because decisions by final policymakers are policy." *Hobart v. City of Stanford*, 916 F. Supp. 2d 783, 793 (S.D. Tex. 2013) (citing *Praprotnik*, 485 U.S. at 127); *see also Rivera v. City of San Antonio,* No. SA-06-CA-235-XR, 2006 WL 3340908, at *13 (W.D. Tex. Nov. 15, 2006) (disagreeing with the City that post hoc approval of prior conduct cannot be the moving force behind a constitutional violation.); *Santibanes v. City of Tomball, Tex.*, 654 F. Supp. 2d 593, 613 (S.D. Tex. 2009) (where chief of police approved of the officer's use of force, even though the officer's conduct violated the police department's use of force policy, "it is reasonable to infer that Sergeant Williams used deadly force with the knowledge that the City would exact no consequence for his actions."). This custom of failing to discipline officers for violent, discriminatory behavior led to the use of excessive force against Green.

### C.    Plaintiff adequately pleaded a claim for ratification

And, as noted in the Complaint, the City's after-the-fact ratification shows that the City supported these unconstitutional uses of force **at the time they occurred**.  For

example, in *Santibanes v. City of Tomball, Tex.*, the District Court found evidence sufficient to defeat the City's motion for summary judgment when the evidence showed that the police officer was not disciplined or retrained after his unconstitutional use of excessive force. 654 F. Supp. 2d at 613. The court held,

> Evidence of this nature tends to imply that the City may have affirmatively acquiesced in, adopted and/or sanctioned [the officer's] conduct and failed to actively enforce its own policies and procedures…Such affirmative official action lends itself to the possibility of recurring situations that present the potential for constitutional rights' violations.

*Id*. at 615. When the City failed and refused to discipline the Defendant Officers for their clearly established constitutional violations, it approved of and ratified the Defendant Officers' conduct, which itself establishes a custom of the Mesquite Police Department. *See World Wide St. Preachers Fellowship*, 591 F.3d at 755.

And as discussed further below, Plaintiff also believes that additional discovery will reveal both the relevant training documents and prior relevant instances of unconstitutional use of force. But, at this point, even without the benefit of any discovery, Plaintiff has met his burden to plead facts showing that the inadequate training was a moving force behind his excessive force injuries.

### D.  Plaintiff adequately pled that the City's policies or customs were the moving force cause of the violation of Green's constitutional rights.

To prove that a policy, practice, or custom is the moving force behind the constitutional right violation, a plaintiff need only show that: (1) the policy itself violated federal law or authorized or directed the deprivation of federal rights; or (2) the policy was adopted or maintained by the municipal's policymakers with "deliberate

indifference" as to its known or obvious consequences by way of at least a pattern of similar violations. *See Williams v. City of Denton, Tex.*, No. 4:17-cv-00811, 2019 WL 438403, at *7 (E.D. Tex. Jan. 10, 2019), *report and recommendation adopted*, 2019 WL 430913 (E.D. Tex. Feb. 4, 2019) (citing *Johnson v. Deep E. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 308-09 (5th Cir. 2004)).

"[A] plaintiff must establish that the policy was the moving force behind the violation. In other words, a plaintiff must show direct causation. This means that 'there must be a direct causal link' between the policy and the violation, not merely a 'but for' coupling between cause and effect." *Lupi v. Diven*, No. 1:20-CV-207-RP, 2020 WL 6324396, at *10 (W.D. Tex. Oct. 27, 2020). In the context of ratification, causation  is shown if a policymaker approves of unconstitutional conduct (1) with knowledge of "its underlying, improper basis," *Taylor v. Hartley*, 488 F. Supp. 3d 517, 537 (S.D. Tex. 2020); *see also Covington v. City of Madisonville*, 812 F. App'x 219, 228 (5th Cir. 2020); or (2) without knowledge of the conduct's true and unlawful nature, but the officer's actions were "manifestly indefensible," even if the policymaker "blindly accepted" the officers' own version of events. *Cole v. Hunter*, 497 F. Supp. 3d 172, 186 (N.D. Tex. 2020) (citing *Fraire v. City of Arlington*, 957 F.2d 1268, 1278 (5th Cir. 1992)).

In addressing causation in the ratification context, the Fifth Circuit has recognized two actionable claims. First, municipal policymakers who fail to supervise and to discipline their police officers could create municipal liability if the lack of supervision then caused a deprivation. *See Milam v. City of San Antonio*, 113 F. App'x 622, 628 (5th Cir. 2004). Second, even though a policymaker's response to a particular incident may not

cause the injury, *when combined with other evidence*, it could tend to support an inference that there was a preexisting de facto policy of the alleged unlawful conduct. *Id.*

In proving causation for a *Monell* claim based on ratification, the supporting evidence generally requires an instance of "extreme factual scenarios," meaning (1) obvious violations of clearly established law, and (2) the collective conduct of many individuals and multiple bad acts. *See e.g., Fuentes v. Nueces Cnty., Tex.,* 689 Fed. Appx. 775, 779 (5th Cir. 2017) (distinguishing *Grandstaff v. Borger,* 767 F.2d 161 (5th Cir. 1985)).

Here, Plaintiff has adequately pled an "extreme factual scenario" that would support liability.[3]  The seminal case on the issue, *Grandstaff v. Borger,* involved multiple officers pursuing a car for a minor traffic violation and then mistaking a bystander as the suspect and firing multiple rounds into his car. 767 F.2d at 171.[4] The Fifth Circuit held that it was proper to infer a preexisting policy or custom where "no reprimands, no discharges, and no admissions of error" were made following "incompetent and catastrophic" police performance on a single night, and that "the subsequent acceptance of dangerous recklessness by the policymaker tends to prove his preexisting disposition and policy." *Id.* The court noted, "Following this incompetent and catastrophic performance, there were no reprimands, no discharges, and no admissions of error. The

---

[3] It is debatable whether the Fifth Circuit even requires an "extreme factual scenario," especially at the motion to dismiss state. *See Taylor,* 488 F. Supp. 3d at 540  ("Not all Fifth Circuit ratification cases address or appear to require proof of an extreme factual scenario … Confounding this further, the Court is only aware of two Fifth Circuit ratification cases at the motion to dismiss stage, and neither turned on whether the background facts were sufficiently extreme.)

[4] *See also Hobart,* 916 F. Supp. 2d at 796 (denying city's motion for summary judgment due to sufficiently extreme factual scenario when single police officer shot an unarmed civilian several times).

officers testified at the trial that no changes had been made in their policies. … If prior policy had been violated, we would expect to see a different reaction." *Id.* Likewise, the failure of the City or the Mesquite Police Department to punish any of the officers involved or to make any reasonable attempt to implement meaningful changes in light of the blatant use of excessive force against Green emphasizes the point – this is how things have always been done.

Here, Green initially ran from two people who he did not know to be police officers, and who did not initially identify themselves as police officers. At the time, Green was doing nothing wrong and had not broken any laws but was concerned when two unidentified men approached him in the dark at 11:30 p.m.. Green did not have a weapon in his hands and never made any threatening moves or gestures towards the officers.

He was initially shot twice in the back by the Defendant Officers as he fled. The officers continued to fire multiple shots, and eight of the bullets struck Green. The Defendant Officers had no justification for shooting Green on sight – he had no weapon in either hand, had made no threatening moves, and in fact had not even spoken or interacted with the officers when they shot him in the back. Yet this "incompetent and catastrophic performance" resulted in no disciplinary action, no retraining, and no reevaluation of policies by the City. Rather, the City and the Mesquite Police Department ratified the Defendant Officers' conduct.

III.    **Additional discovery will allow Plaintiff further opportunity to establish liability against the City and the Defendant Officers.**

Plaintiff's allegations are just the tip of the iceberg of evidence that Plaintiff expects to develop through discovery regarding his claims against the Defendant Officers and the City of Mesquite. In particular, Plaintiff would seek body camera footage and evidence of prior similar incidents within the Mesquite Police Department. All this evidence is relevant and will further establish Defendants' liability. As such, if the Court feels that the evidence is currently inadequate to support Plaintiff's claims, Plaintiff would request the opportunity to proceed with further discovery and amend his complaint at such time.

CONCLUSION AND PRAYER

At this stage in the proceedings, the Court must look to the four corners of the pleadings and take Plaintiff's pleaded facts as true. Plaintiff Green has adequately alleged constitutional violations by the City of Mesquite and the Defendant Officers. For these reasons, Plaintiff respectfully requests that the Court deny the Defendants' Motion to Dismiss in its entirety and grant Plaintiff such other relief to which he may be justly and equitably entitled. In the alternative, Plaintiff would ask for an opportunity to amend his complaint.

Respectfully submitted,

By:     /s/ Daryl K. Washington
         **Daryl K. Washington**
         State Bar No. 24013714
         dwashington@dwashlawfirm.com
         WASHINGTON LAW FIRM, PC
         325 N. St. Paul St., Suite 3950
         Dallas, Texas 75201
         (214)-880-4883 – Office
         (214)-751-6685 – Facsimile

         **ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

I hereby certify that on **April 9, 2024**, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court.  The electronic case filing system sent a "Notice of Electronic Filing" to the following attorneys of record who have consented in writing to accept this notice as service of this document by electronic means:

Joe C. Tooley (joe@tooleylaw.com)
TOOLEY LAW
510 Turtle Cove, Suite 112
Rockwall, Texas 75087
(972) 722-1058 –  Office
(972) 722-1070 –  Facsimile
***Attorney for Defendants***

         /s/ Daryl K. Washington
         **Daryl K. Washington**